IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

J & J SPORTS PRODUCTIONS, INC.,

    Plaintiff,

  v.

MICHAEL DAVID CARDOZE, individually
and d/b/a MIKE'S BAR & GRILL,

    Defendant.
                                       /

No. C 09-05683 WHA

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

## INTRODUCTION

In this action for damages resulting from the unlawful interception and intentional exhibition of a sporting program, plaintiff J & J Sports Productions, Inc. moves for default judgment against defendant Michael David Cardoze owner of Mike's Bar & Grill. For the following reasons, the motion for default judgment is **GRANTED**.

## STATEMENT

The facts alleged by plaintiff are as follows. Plaintiff, a distributor of sports and entertainment programming, purchased exhibition rights to broadcast the *"The Dream Match": Oscar de La Hoya v. Manny Pacquaio, Welterweight Championship Fight Program.* This program included the main fight between Oscar de La Hoya and Manny Pacquaio as well as preliminary bouts. In order to broadcast the program, commercial entities were required to enter into a subleasing agreement with plaintiff. The interstate transmission of the program was encrypted and only made available to plaintiff's customers who had paid the licensing fees.

1    On December 6, 2008, investigator Gary Gravelyn observed the alleged unlawful
2 exhibition of the program at Mike's Bar & Grill — owned at the time by defendant Michael
3 David Cardoze. In his affidavit, Gravelyn observed seven television sets and gave handwritten
4 descriptions of their size and location. The names of the boxers he observed on the television
5 were participants in an earlier bout leading up to the main fight (Decl. ¶ 2).

6    Investigator Gravelyn's affidavit did not expressly describe which television set was
7 displaying the program, nor did it state how many sets were displaying the program. For the
8 purposes of this order, it will be presumed that all seven televisions sets were broadcasting the
9 program. In his report, Gravelyn circled that a cable box "was not" visible and the establishment
10 "has" a satellite dish. Attached to the affidavit were two photos of the establishment with a
11 blurry photo of the satellite dish. Mike's Bar & Grill was recorded to have a 150 person
12 capacity. There was no required cover charge. During the three minutes Gravelyn was at the
13 establishment he performed three headcounts. One count was for thirty-seven people, one count
14 was for forty people, and the final count consisted of forty-five people. Gravelyn then exited the
15 bar and noted the license plates of six vehicles in the parking lot adjacent to the establishment
16 (Decl. ¶ 2).

17    On December 3, 2009, plaintiff filed suit against defendant Cardoze. Plaintiff has also
18 filed four other suits against defendant for other interception incidents similar to the situation
19 herein. After three attempts to serve defendant at the establishment, service was left with
20 "Melissa Doe" (refused last name), an employee at Mike's Bar & Grill. On the following day,
21 January 14, 2010, service was sent by certified mail to defendant at Mike's Bar & Grill.
22 An answer by defendant was due on February 3, 2010. Defendant did not file an answer and has
23 not subsequently appeared. On February 15, 2010, plaintiff filed a request for entry of default
24 with the court Clerk (Dkt. 6). Default was entered by the Clerk on February 17, 2010 (Dkt. 7).

25    In its application for default judgment, plaintiff seeks a judgment granting the following
26 relief: (1) $10,000 in statutory damages for violation of 47 U.S.C. 605; (2) $100,000 in enhanced
27 damages for violation of 47 U.S.C. 605; and (3) $4,200 in damages for conversion under

2

Cal. Civ. Code § 3336. Plaintiff's motion for default judgment also asserts the right to recover attorney's fees and costs. These requests are considered below.

## ANALYSIS

According to FRCP Rule 4(e)(2)(B), serving a suitable copy of the summons and complaint at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there results in proper service. Furthermore, under Rule 4(h)(1)(a), because defendant is being sued as owner of the corporation, the above means are valid for service as well. On January 13, 2010, a copy of both the summons and complaint were left at the principle place of business for the owner and corporation, and with an adult employee of the institution. This order finds that service of process was adequate.

Under FRCP 55(b)(2), a party can apply to the court for entry of judgment by default. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In considering whether default judgment is appropriate, the following factors are considered:

> (1) [T]he possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### 1. MERITS OF SUBSTANTIVE CLAIMS AND SUFFICIENCY OF THE COMPLAINT.

After the entry of default, all well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The merits of plaintiff's substantive claims and the sufficiency of the complaint are thus considered together.

#### A. Statutory Damages.

"The Federal Communications Act, 47 U.S.C. sections 605 *et seq.*, prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming." *J & J Sports Productions, Inc. v. Guzman*, 2009 WL 1034218 (N.D. Cal. 2009) (citations

3

omitted). Under section 605(e)(3)(C)(i)(II), damages for each violation are set at a minimum of $1,000 and a maximum of $10,000.

The Cable and Television Consumer Protection Act, 47 U.S.C. 553, "prohibits a person from 'intercepting or receiving or assisting in intercepting or receiving any communications service offered over a cable system.'" *J & J Sports Productions Inc., v. Manzano*, 2008 WL 4542962, 2 (N.D. Cal. 2009). Under section 553(c)(3)(A), damages for each violation are awarded at a minimum of $250 and maximum of $10,000.

Plaintiff may not recover under both 47 U.S.C. 605 and 47 U.S.C. 553. "A signal pirate violates section 553 if he intercepts a cable signal, he violates 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception." *Ibid*. While plaintiff's application for default judgment does allege that defendant violated 47 U.S.C. 553, it does not include section 553 in its calculation of damages. Rather, it requests statutory and enhanced damages under section 605 alone. (Br. 6).

Plaintiff asserts that section 605 is proper for analysis in this suit because there is ample evidence demonstrating the existence of a satellite dish. It's memorandum recognizes that in a similar suit where it was filing against a different defendant, it's identical claims were analyzed under section 553 by the undersigned.(Br. 6). In *J & J Sports Production v. Steve Sang Ro*, plaintiff sued because of the interception of a boxing match broadcast by the owner of a bar and sought damages under section 605. *J & J Sports Production v. Steve Sang Ro*, No. C 09-02860 WHA, 2010 WL 668065 at 1–2 (N.D.Cal. Feb. 19, 2010). The undersigned refused this request and awarded default damages under section 553. What plaintiff has failed to do was to heed the instructions provided in that prior suit.

> Plaintiff offers no other explanation why the damages should be analyzed under Section 605 — the statute with the higher minimum award and requirement for attorneys fees and costs — instead of Section 553. . . Plaintiff argues that it "should not be prejudiced" because it cannot determine the means of transmission, however, if plaintiff wanted to prove this, they could have filed a third party subpoena or requested an order for inspection.

*Id*. at 5.

4

Plaintiff has not provided any proof ruling out the presence of a cable box. That plaintiff's investigator did not see a cable box and saw a satellite dish does not mean that there was not a device out of view to receive cable transmissions (Br. 6). A photo of the satellite dish from the outside of the building is not sufficient proof to qualify plaintiff for damages under section 605. Similar photos were submitted in the above suit and were insufficient to obtain damages under section 605. The fact that defendant defaulted did not rule out plaintiff's opportunity to have utilized third-party discovery to address this point. Therefore, defendant's violation will be analyzed under section 553.

Plaintiff's memorandum highlights that defendant is a repeat offender and that he is being sued by plaintiff in four other actions. The need to deter defendant from similar action is present. "For example, a higher statutory award may be justified in cases where defendants are repeat offenders who have pirated similar Programs on previous occasions, and who need an especially severe financial deterrent." *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198–9 (N.D. Cal. 2000). Plaintiff's arguments are limited in it's memorandum because it spends less time analyzing the facts and violations of defendant and more time trying to showcase the larger awards granted in other districts. In light of the information presented, this order awards $1000 in statutory damages under section 553.

### B.     Enhanced Damages.

Plaintiff also requests enhanced damages of $100,000, the maximum amount under section 605(e)(3)(C)(ii). The relevant provision under section 553(c)(3)(B) allows for maximum enhanced damage award of $50,000. The memorandum advocates for these damages because they serve as a deterrent to similar actions in the future. While these damages will deter defendant in the future, the other infractions that have already taken place will be accounted for in the other suits that are being adjudicated. The undersigned has declined to award enhanced damages in the past suits brought by plaintiff. This suit is distinguishable because defendant is still the owner of the establishment and is a repeat offender. Considering the facts in this case, this order awards $250 in enhanced damages.

### C. Conversion.

The Ninth Circuit has held that a claim for conversion in California has three elements: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rassmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Since plaintiff had purchased the licensing rights to the program at issue, these three elements are met. Mike's Bar & Grill had a capacity of 150 people. According to the affidavit by J & J Sports' president, Joseph Gagliardi, the amount that defendant — a commercial establishment with a maximum occupancy of 150 — would have been required to pay for a proper sublicensing agreement was $4,200 (Gagliardi Aff. ¶ 3). Accordingly this order awards $4,200 for the conversion claim.

### D. Attorney's Fees and Costs.

Although attorney's fees under section 605 are automatically granted to the winning party, under section 553, the court *may* grant attorney's fees. The declaration of plaintiff's counsel, Thomas P. Riley, includes an itemized calculation of the requested judgment. This document does not mention attorney's fees and costs. The notice for application for default judgment does assert a right to attorney's fees and costs under section 605. As discussed above, this order declines to use section 605 in its analysis without more evidence as to the means used to intercept the broadcast. The memorandum does not offer any dollar amount or additional support for why plaintiff's attorney's fees should be included. Like the Court in *Kingvision Pay-Per-View, LTD. v. Backman*, 102 F. Supp. 2d at 1199 (another default judgment brought by Attorney Riley), the undersigned "is wary of granting unreasonable fees for similar work done in . . . virtually identical cases."

While plaintiff's memorandum does present caselaw documenting large damage awards that have been granted to plaintiffs subject to these types of infringements, its memorandum largely lacks arguments about the specific facts of the suit. There are mistakes throughout plaintiff's filings. In *J & J Sports Production, Inc. v. Steve Sang Ro*, the undersigned awarded $1,500 in fees and costs to the same attorney herein. The errors and mischaracterizations made in that case resulted in the plaintiff's counsel being reprimanded. The same attorney herein

6

apologized to the undersigned for the mistakes made in that suit, yet the filings in this suit contain mistakes nonetheless. *Steve Sang Ro*, 2010 WL 668065 at 7–8. Taking into account the paperwork filed and previous warnings, this order awards $1,500 for attorney's fees and costs.

### 2. REMAINDER OF THE *EITEL* FACTORS.

The remainder of the *Eitel* factors favor entering default judgment in favor of plaintiff. If this motion is not granted, plaintiff will be left without a remedy or a means to prevent defendant's continued delinquency. Defendant have made no appearance and no answer except for a reply to the default judgment. There is no evidence that defendant's failure to respond was the result of excusable neglect. The document containing the "reply" was entered for four separate actions, with each case number located on the top of the document. It does not specifically describe or mention the details of the violation in this action. This appears to be a cookie cutter memo intended to cover four separate lawsuits. The memo does not contest liability, only the amount of damages sought. The amount of damages granted in this action have been limited based upon what the record supports.

It is true that a large sum of money at stake would disfavor default judgment. *See Eitel*, 782 F.2d at 1472 (stating that three million dollar judgment at stake, considered in light of the parties' dispute as to material facts, supported the court's decision not to enter default judgment). The declaration of Attorney Riley requests damages totaling $114,200. As discussed above, this order declines to award the requested amount. The combined award for attorney's fees, costs, statutory, enhanced and conversion damages will be $6950. This amount does not disfavor granting default judgment.

Finally, although federal policy does favor a decision on the merits, Rule 55(b) allows entry of default judgment in situations such as this, where defendant has refused to litigate. On balance, the *Eitel* factors weigh in favor of granting default judgment.

7

**CONCLUSION**

For the reasons stated above, plaintiff's motion for default judgment is **GRANTED**. Plaintiff will receive $1,000 in statutory damages, $250 in enhanced damages, $4,200 in damages for conversion, and $1,500 in attorney's fees and costs.

**IT IS SO ORDERED.**

Dated: July 8, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE